**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **CAMERON MALUGIN, #515524,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 1:25-cv-00072** |
| | ) | |
| **CORE CIVIC, et al.,** | ) | **JUDGE CAMPBELL** |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Cameron Malugin, a state inmate in custody at the South Central Correctional Facility (SCCF), filed a Complaint under 42 U.S.C. § 1983 (Doc. No. 1), a Motion to Appoint Counsel (Doc. No. 2), and an application for leave to proceed in forma pauperis (IFP) (Doc. No. 4).

This case is before the Court for ruling on Plaintiff's IFP application and Motion, and for initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

## I. PAUPER STATUS

Subject to certain statutory requirements, *see* 28 U.S.C. § 1915(a)(1)–(2), (g), a prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the $405 filing fee. Because Plaintiff's IFP application complies with the applicable statutory requirements and demonstrates that he lacks the funds to pay the entire filing fee, the IFP application (Doc. No. 4) is **GRANTED**.

Nevertheless, prisoners bringing civil lawsuits or appeals are "required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). Where the prisoner proceeds IFP, the fee is $350 instead of $405, *see id.* § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1,

2023), and may be paid in installments over time via an assessment against his inmate trust account. 28 U.S.C. § 1915(b)(1)–(2).

Accordingly, Plaintiff is **ASSESSED** a $350 filing fee. The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint" or

any portion of it is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see also* 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A viable claim is stated under 42 U.S.C. § 1983 if the Complaint plausibly alleges (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

**B. Factual Allegations**

On May 19, 2025, Plaintiff reported to Lieutenant Joshua Carroll that his life was in danger in his current housing unit, "Columbia B," where he had been threatened, targeted, and extorted because he was "in the middle of an estate case." (Doc. No. 1 at 8.) Carroll sent Plaintiff to speak with Captain Bethanie White, and White sent Plaintiff to the medical unit. (*Id.*) However, after

meeting Plaintiff in the medical unit, White and Columbia B Unit Manager Valerie Davis placed him in handcuffs and announced that he was being returned to Columbia B. (*Id.*) Correctional Officer ("C/O") Megan Stricklin had arrived at this point. Plaintiff pleaded with the officers not to return him to Columbia B, but White and Stricklin grabbed him to force him in that direction. (*Id.*) At that point, Plaintiff dropped to his knees, repeating the reasons why he would not be safe in Columbia B. (*Id.*) White, Stricklin, and Davis then began attempting to "force him to stand by twisting, slamming, and snatching." (*Id.* at 8–9.) Carroll, Chief of Security Theodore Williams, C/O Jessee "Red Beard" Mattson, and C/O Colton "G" Gjerness arrived at the scene, where Plaintiff was "refus[ing] to stand, but not posing any sort of threat." (*Id.* at 9.) For the next ten to fifteen minutes, the officers assaulted the handcuffed Plaintiff, whom they "repeatedly picked up, tossed, slammed, punched, left elbow dislocated, [and] strangled," leaving him "excessively beaten, hardly breathing, [and] half clothed." (*Id.*) The officers then lifted Plaintiff and carried him by his four limbs, face down, with hands cuffed behind his back. (*Id.* at 9–10.) He lost consciousness on more than one occasion, only to awaken when he was dropped on his face to the concrete sidewalk below. (*Id.* at 10.) He eventually arrived at Columbia B, cell 222, where he was "tossed face down." (*Id.* at 10–11.)

"For the next several days," Plaintiff was denied medical treatment and food by Davis, Gjerness and a C/O named Manis. (*Id.* at 11.) Grievance forms were brought to him, but the grievance he filed was returned the next day "as inappropriate." (*Id.* at 12.) Then, when Plaintiff asked Davis for her first name so that Plaintiff could notify his attorney, Davis assigned an incompatible inmate to be Plaintiff's cellmate. (*Id.*)

Plaintiff subsequently complained to Manis about not being provided a breakfast tray, but Manis did not assist him. Instead, Manis assisted Plaintiff's cellmate by allowing him to "run in

and out unsecuring the door, allowing others to enter." (*Id.* at 13.) On May 28, 2025, after Plaintiff had secured his cell door, Manis opened the door to allow an "unassigned inmate to run in assaulting the plaintiff, threatening to stab him, beating his eyes shut, hitting him over the head with textbooks and pummeling him while he was face down unable to defend himself." (*Id.* at 13–14.) After 5–6 minutes, Manis reopened Plaintiff's cell door "to find the plaintiff bloody, eyes swollen shut, several deep lacerations to the top of the head and face." (*Id.* at 14.) Plaintiff was taken to the medical unit, where Nurse Banks examined him and asked Stricklin if she needed to take pictures. (*Id.* at 14–15.) Stricklin replied, "No," telling Nurse Banks that Plaintiff was "going to seg[regation]." (*Id.* at 15.) No stitches or bandages were applied, and no x-rays or pictures were taken. (*Id.*)

Plaintiff was left in segregation for over 48 hours without a mat, blanket, pillow, or sheets. (*Id.*) He spent over two weeks in segregation and was never given soap, shampoo, towels, or clean clothes. (*Id.*) On the one occasion when he was allowed to shower, he had to do so without soap or shampoo and had to use his dirty clothes to dry his body and then put them back on, to wear again. (*Id.*) Plaintiff's personal property, including his paperwork related to his estate case, was either lost or thrown out while he was in segregation. (*Id.* at 16.)

An internal affairs officer, Sergeant Beckham, arrived while Plaintiff was in segregation, having "been notified by Nashville … that he needed to speak with the Plaintiff, concerning the assaults [and] being locked behind the door." (*Id.*) Beckham took pictures of Plaintiff, asked for incident reports to be filed, and directed that he be placed in protective housing. (*Id.*) A few weeks later, Plaintiff's protective housing unit was "reclassified as a Drug Program unit, ultimately placing the plaintiff back at risk[.]" (*Id.*)

**C. Analysis**

In delineating his claims, Plaintiff begins with a claim of excessive force. (Doc. No. 1 at 20.) The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits the use of excessive force against convicted prisoners. The force used against a prisoner is excessive if it is "grossly disproportionate to the offense committed by the prisoner" or if it "represents an 'unnecessary and wanton infliction of pain.'" *Butler v. Trett*, No. 619CV00187GFVTEBA, 2021 WL 5218537, at *4 (E.D. Ky. July 15, 2021), *report and recommendation adopted*, 2021 WL 3913570 (E.D. Ky. Sept. 1, 2021) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The "core judicial inquiry" in considering such a claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

There is an objective component to Eighth Amendment excessive-force claims, which requires the pain inflicted to be sufficiently serious. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). However, the Court may not apply a "de minimis injury" test to such claims, as "the judicial inquiry should focus on 'the nature of the force rather than the extent of the injury.'" *Williams*, 631 F.3d at 384 (quoting *Wilkins*, 559 U.S. at 34). For purposes of initial review, the Complaint sufficiently alleges that the force used against Plaintiff (delivered by punching, strangling, kneeing, and jumping on him while he was restrained in handcuffs) and the injuries he sustained (including a dislocated elbow) were serious enough to plausibly claim a right to relief.

"Subjectively, harm to a prisoner must result from a prison official's sufficiently volitional actions because the Eighth Amendment bars only willful conduct that 'inflict[s]' 'punishment,'

not accidental conduct that causes injury." *Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023) (citing *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021)). Defendants were apparently initially motivated to use force against Plaintiff because of his refusal to move in the direction they were attempting to lead him. But Plaintiff's allegations, taken as true for purposes of initial review, suggest that force continued to be applied to him for several minutes after his initial refusal to stand, when he was both "handcuffed and passive," *Erickson v. Gogebic Cnty., Michigan*, 133 F.4th 703, 709 (6th Cir. 2025), and perhaps incapable of standing. Given the early stage of these proceedings and the Court's obligation to draw all reasonable inferences in Plaintiff's favor, the Court finds for purposes of initial review that a plausible excessive-force claim is stated here. *Cf. id.* (allowing claim to proceed where inmate initially caused disturbance and failed to comply with guard's command, but subsequently "calmed down" before force was used against him). This claim will proceed for further development against Defendants White, Carroll, Williams, Mattson, Stricklin, Gjerness, and Davis, each of whom allegedly either used excessive force themselves or failed to intervene in order to prevent the use of such force. *See*, *e.g.*, *Wilson v. Flores*, No. 1:23-CV-00023-HBK (PC), 2023 WL 8477994, at *2 (E.D. Cal. Dec. 7, 2023) ("Correctional officers have a duty to intercede when they observe excessive force being applied to a prisoner by a fellow officer and have a reasonable opportunity to do intervene.") (citations omitted).

In addition to excessive force, Plaintiff claims the violation of his Eighth Amendment rights in other contexts, including the failure to provide adequate access to food and medical attention; the failure to protect Plaintiff from assault by another inmate; and the failure to provide adequate "clothing, linens, mats, and indigent hygiene" to him while he was in segregation. (Doc. No. 1 at 20–21.)

C/O Manis is the Defendant as to whom the Complaint's factual allegations support a claim of failure to protect from harm inflicted by another inmate, as Manis allegedly opened Plaintiff's cell door to allow an "unassigned inmate to run in [for purposes of] assaulting the plaintiff," secured the door behind the unassigned inmate, and then reopened the cell door 5–6 minutes later to let the unassigned inmate out. (Doc. No. 1 at 14.) Plaintiff was left in the cell, beaten and bloodied. (*Id.*) "Under the Eighth Amendment, prison officials have a duty to protect inmates from violent acts of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a constitutional violation based on a failure to protect, an inmate must establish that: (1) the failure to protect from risk of harm is objectively sufficiently serious; and (2) prison officials acted with deliberate indifference to inmate health or safety. *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011)." *Montgomery v. Ferentino*, No. 20-3114, 2021 WL 3204843, at *2 (6th Cir. Feb. 24, 2021) (internal quotation marks omitted). For purposes of initial review, Plaintiff's allegations against Manis support a plausible failure-to-protect claim. *Cf. Shehan v. Barrone*, No. 3:22CV879 (OAW), 2023 WL 122039, at *4 (D. Conn. Jan. 6, 2023) (finding Eighth Amendment claim sufficiently alleged where guard was aware of other inmate's threats against plaintiff, opened plaintiff's cell door to allow other inmate access to plaintiff, and then closed cell door and prevented plaintiff from exiting to avoid the attack).

Manis and Davis, in addition to Gjerness, are also accused of depriving Plaintiff of needed medical treatment for his dislocated elbow and other injuries. "When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for nonmedical reasons, their conduct in causing the delay creates the constitutional infirmity." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), quoted in *Bush v. Dickerson*, No. 16-6140, 2017 WL 3122012, at *3 (6th Cir. May 3, 2017) (finding summary

judgment improper as to claim of denial of medical treatment to inmate with swollen eye and several cuts to the face, who testified he was "bleeding badly from [his] face with broken bones" when guard "walked away smiling"). The claim that Plaintiff's Eighth Amendment rights were violated when he was denied medical treatment for "several days" after suffering injuries that obviously needed medical attention is plausibly stated for purposes of initial review, and will proceed for further development against Manis, Davis, and Gjerness.

As to the Complaint's claims regarding deprivation of food, Plaintiff alleges that he "repeatedly asked … to be fed" over the course of "several days." (Doc. No. 1 at 11.) But he does not allege whether he was denied all food, or merely particular meals. There is a bare reference to being "starved" (*id.*) and being denied breakfast trays (*id.* at 13), but no further facts about food service are alleged. Though he alleges that Defendants "fail[ed] to provide adequate food to the plaintiff, for over one week" (*id.* at 24), Plaintiff does not claim that his health suffered from lack of adequate nutrition. *See Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (finding that deprivation of seven meals in six days, "while it may result in some discomfort to the prisoner," does not rise to the level of an Eighth Amendment violation; noting that, although calorie content of meals was not established in the record, plaintiff did not allege deterioration of his physical health due to lack of food). The Sixth Circuit has recognized that the provision of even one meal a day, if that meal provides sufficient calories to maintain normal health, can pass constitutional muster over a period as long as fifteen days. *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982). In short, Plaintiff's claim concerning food deprivation is not sufficiently pled to survive initial review.

As to Plaintiff's claim that he was left in segregation for over 48 hours without a mat, blanket, pillow, or sheets, and spent over two weeks there without being given soap, shampoo,

towels, or clean clothes, these alleged deprivations do not rise to the level of an Eighth Amendment violation and therefore do not survive initial review. *See Richmond*, 450 F. App'x at 455 (citing, *e.g.*, *Jones v. Toombs*, No. 95–1395, 1996 WL 67750, at *1 (6th Cir. Feb.15, 1996)) (deprivation of mattress and bedding for a "fixed period of time," whether one day or up to two weeks, does not violate Eighth Amendment); *Alger v. Washington*, No. 2:24-CV-11859, 2025 WL 1680002, at *3 (E.D. Mich. Apr. 29, 2025), *report and recommendation adopted*, 2025 WL 1662746 (E.D. Mich. June 12, 2025) (finding that, "[e]ven if Plaintiff had specifically alleged that he was without any and all hygiene items for a month, that would not rise to the level of an Eighth Amendment violation" where no harm was alleged to have resulted from a lack of soap, shampoo, a towel, etc.) (citing cases).

Finally, as to Core Civic (and Plaintiff's claims against Core Civic employees in their official capacity, which are effectively claims against Core Civic[1]), that corporate entity can only be liable if Plaintiff's injuries were directly caused by the execution of a corporate policy. *See Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012). The Complaint's factual allegations do not support the inference that any Core Civic policy in place at SCCF was behind the use of force or other actions or inactions against Plaintiff, as would be required to plausibly claim a right to relief against that corporate entity. In its statement of legal claims, the Complaint asserts that Core Civic's "failure … to take disciplinary or other action to curb the known pattern of physical [and] mental abuse of inmates by the defendants and other staff constituted deliberate indifference to the Plaintiff and other prisoners['] safety, and contributed to and proximately caused" the violation of

[1] "While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

Plaintiff's constitutional rights (Doc. No. 1 at 20), but this assertion is entirely conclusory. At this stage, the Court "accepts as true all factual allegations, but … does not apply this presumption of truth to conclusory or legal assertions." *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678–79). "If the plaintiff's facts, accepted as true, do not state a claim that has facial plausibility, the plaintiff has not satisfied the pleading requirements under Rule 8," and the unsupported claim(s) "will be dismissed." *Id.* Accordingly, Core Civic will be dismissed from this action, as will the official-capacity claims against the individual Defendants.

## III. CONCLUSION

As explained above, the Complaint's Eighth Amendment claims will be allowed to proceed against Defendants Bethanie White, Joshua Carroll, Theodore Williams, Jessee Mattson, Megan Stricklin, Colton Gjerness, Valerie Davis, and C/O Manis.[2] Defendant Core Civic is **DISMISSED** from the action.

With the case still in the pleading stage, Plaintiff's Motion to Appoint Counsel (Doc. No. 2) is **DENIED** as premature, without prejudice to renewal at a later date after service of process is accomplished.

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each of the eight individual Defendants. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of this Order's entry on the docket. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on the defendant. Fed. R. Civ. P. 4(b) and (c)(3).

---

[2] The Court's determination that the Complaint states colorable claims for purposes of this initial screening does not preclude any Defendant from filing a motion to dismiss under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE